Turley, J.
delivered the opinion of the court.
In the month of September, 1841, Temperance McLean died, in the county of Henry, State of Tennessee, leaving as her heirs at law a son, James McLean, a daughter, Axey, wife of George Johnson, and two grandchildren, Robert and Joseph McLean, the representatives of a deceased son, Joseph. On the day preceding her death, she caused an instrument of writing to be prepared, which is in the words and figures following, viz:
“James and Anna to have Linda and Phillis, and to be enduring their life, and at their death to their heirs. Axey to have Phebe and Dick; this property is to be Axey’s and her heirs. This is to be the property of Nancy McLean’s two sons, Wesly and Joseph — to have 20 dollars a piece — Axey to pay 20 and James 20.” This paper is attested by Nancy Humphreys, Lewis Dooing and Frances Paschal.
This paper writing was offered by the defendant for pro *453 bate, as the last will and testament of Temperance McLean-This was resisted by the plaintiff, and upon an issue, devi-savit vel non, tried in the circuit court of Henry county. Under the charge of the court a verdict was returned in favor of the defendant; and, thereupon, this instrument was adjudged to be the last will and testament of Temperance McLean, and ordered to be admitted to probate in the county court; from which judgment, the plaintiff appealed to this court.
On the trial, Nancy Humphreys, one of the subscribing witnesses, deposed, that she wrote the above described instrument at the request of Temperance McLean, and then witnessed it; that she' read it over three times to her; that Mrs. McLean called it a memorandum by which the world might know how she wished her property disposed of after her death; that she did not use the word, will; that she was in her proper mind; that by James and Anna, she meant her son James and wife; by Axey, she meant her daughter, Mrs. Johnson; and by Wesley and Joseph, her two grand-children, sons of her deceased son, Joseph McLean.
Frances Paschal, another of the subscribing witnesses, deposed, that she witnessed the before described paper, at the request of Temperance McLean; that she told her that was what she wanted done with her property; that she wanted the world to know how she gave her property; and that she was in her proper mind.
Lewis Dooing, the other subscribing witness, deposed, that he witnessed the paper at the request of Mrs. McLean, and that she was in her right mind.
There is no pretence >for supposing that the testimony of these three witnesses is not strictly true in every particular; it is not contradicted in any material respect whatever, and fully establishes the execution of the paper as described by them; and the only question left for determination is, whether a paper in this form is a good will for personalty; if it be, the verdict and judgment of the circuit court is correct, as it is proven in solemn form by the witnesses, and ought to be admitted to probate.
In the case of Ross vs. Ewin, 3d Atkins, 163, Lord Hardwick said, there is nothing that requires so little solemnity as *454 the making a will of personal estate, according to the ecclesiastical laws of the realm; for there is scarcely any paper writing which they will not admit as such.
Mr. Williams, in his treatise on Executors, vol. 1st, page 54, says: “Although much greater strictness seemed to have prevailed in earlier times, it has been decided in a great variety of modern instances, that it is not necessary that an instrument should be of testamentary form in order to operate as a will: indeed, it may be considered as a settled point, that the form of a paper does not affect its title to probate, provided it is the intention of the deceased that it should operate after his death. Thus, a deed poll or an indenture, a deed of gift, a bond, a marriage settlement, letters, drafts on bankers, stock and bills endorsed for A. B., an endorsement on a note, T give this note to C. D.,’ promissory notes, and notes payable by executors to evade legacy duties, have been held to be testamentary.” And again, at page 55, the same author says: “And it must be further observed, that it is not necessary for the validity of a testamentary instrument, that the testator should intend to perform, or be aware that he had performed a testamentary act; for it is settled law, that, if the paper contains a disposition of the property to be made after death, though such paper were not intended to be a will or other testamentary instrument, but an instrument of a different shape, yet, if it cannot operate in the latter, it may, nevertheless, operate in the former character.” For the support of these principles, numerous cases are cited by the learned author, a reference to which may there be found.
The rules of the ecclesiastical courts, (says the same author at page 56,) are not more scrupulous with respect to the language, than the nature of instruments which they allow to operate as testamentary. It is not held necessary that the directions contained in them, how property should be disposed of in the event of death, should be in direct and imperative terms; wishes and requests have been deemed sufficient.
The* same author, at page 50, of the same work, further says: “The signature or seal of the testator is not necessary for the validity of a will of personalty, whether the instrument *455 be in the handwriting of the testator, or in another man’s hand.”
The presumption of law, indeed, is against every paper not actually executed by the testator; but, if the paper be complete in all other respects, the. presumption is slight and feeble, and one comparatively easy tó be repelled — as by its being satisfactorily shown that the non-execution of the paper may be justly ascribed to some other cause than an abandonment of the intentions therein expressed. Thus the presumption may be rebutted by showing that the execution was prevented by an act of God; or that the deceased regarded it as a will, and meant it to operate in its present state, and without doing any further act, in order to give it testamentary effect.
These principles, which are amply sustained by numerous adjudged cases, are complete answers to the. objections' to the form of this yvill, to the language of this will, to the want of signature to this will, and show, most satisfactorily, that it is in form and substance a will, and, as such, entitled to probate upon the proof adduced of its execution.
Judgment affirmed;